Case number 18-3636 Corey A. Kerns, et al. v. Chesapeake Exploration LLC, et al. Oral argument not to exceed 15 minutes for plaintiffs. 15 minutes to be shared by defendants. Philip Campanella for the appellant. You may proceed. Good morning. May it please the court and opposing counsel, Philip Campanella appearing on behalf of the plaintiff landowners. We would like to reserve three minutes of time for rebuttal. We urge the court to reverse and vacate the decision of the district court and to remand this case for further proceedings consistent with the 14th Amendment. The district court erred in dismissing the complaint for failure to state a claim upon which relief can be granted. The essence of this case involves plaintiff's property rights and the process for taking those property rights, all of which are secured by the 14th Amendment, which imposes limitations upon the state regulatory police power. With respect to the plaintiff's property rights, both the United States Supreme Court and the Ohio Supreme Court have stated that the owner of the property, that is the surface of the property, also owns the minerals beneath the property and has a right to extract those minerals by operations conducted on its own land, and all of those rights are secured by the 14th Amendment. The United States Supreme Court cases include Ohio Oil v. Indiana and West v. Kansas Natural Gas Company. The Ohio Supreme Court cases include Kelly v. Ohio Oil, which was recently reaffirmed by the Ohio Supreme Court in Chesapeake Exploration v. Buell. In addition, the Ohio Supreme Court has stated that the owner of the surface of the land has a right to exclude invasions of the subsurface that interfere with the foreseeable and reasonable use of the subsurface by the owner. That case is the Chance v. BP Chemicals case, which is an adaptation of a principle of law articulated by the United States Supreme Court in U.S. v. Cosby, where the United States Supreme Court stated that the owner of the surface of the land owns at least so much of the space above the land as the owner can use or occupy. In the instant case, the oil, the natural gas, and the natural gas liquids are located in the subsurface beneath plaintiff's land. Therefore, the plaintiff has, obviously, a foreseeable and reasonable use of that land to extract those minerals. Let me ask you this question. The state of Ohio has dealt with this whole area in terms of establishing a procedure for dealing with these kind of landowners, multiple landowners, and pooling and so forth and so on. Chesapeake, what they did, did conform to that procedure, did it not? Yes. And so you're saying that the procedure by the state of Ohio that they've established is, what, unconstitutional? Yes. Okay. Did they have to be a party to this case? State of Ohio? Yeah. No, they received, they are, through the Attorney General's Office, representing the chief of the Division of Oil and Gas Resources Management, and therefore they have notification of the case. Well, they've made some decisions in connection with that procedure driven by some practical considerations which define the rights of people in these subsurface situations on the thing. And is that beyond their power to do? It's not consistent with decisions of the United States Supreme Court or the Ohio Supreme Court. Yes, it is. The process that was used in this case violated the takings clause. The United States Supreme Court has held in at least four cases that the permanent physical intrusion of property rights constitutes a per se taking of that property in violation of the takings clause. Those cases are the Horn case, the Kaiser-Aetna case, the Lingo case, and the Loretto case. That's with respect to the takings clause. With respect to the due process clause, the United States Supreme Court has stated that no right secured by the 14th Amendment can be taken by state regulatory police power, and that's exactly what this unitization statute that Ohio has, 1509.28, does. Doesn't it provide for compensation, though? Not consistent with the 14th Amendment takings clause. The United States Supreme Court in the Chicago Railroad case stated that just compensation includes full and fair compensation equivalent to the property taken. The administrative officer, Chief Simmers, in this case, made no attempt and is not even authorized to attempt to determine what just compensation is, and in doing so, that would be a second violation of the due process clause according to the United States Supreme Court. The United States Supreme Court in the Hicks case, Hicks v. Oklahoma, stated that where a state has a statute such as Ohio's mandatory appropriation statute and there's a failure to follow that statute, it is a denial of due process of law. In the instant case, the defendant, Chief Simmers, failed to follow Ohio's mandatory appropriation statute in the taking of the plaintiff's property, that is, the subsurface, the oil, gas, and natural gas liquids located in the subsurface, and in the right to extract. But if they had followed the mandatory appropriation statute, that would be constitutional? That statute is constitutional, indeed, because it provides for a judicial determination of public use. Specifically, it provides for a jury trial on the issue of just compensation that is consistent with the takings clause of the United States Constitution. Some of this, though, overlooks the fact that the basis for the district court's decision was that Chesapeake is not a state actor. That's so. So 1983 isn't applicable. Well, that is not consistent, Your Honor. We understand that's their position. Not consistent with the Lugar case. The Lugar case, decided by the United States Supreme Court, sets forth facts that are parallel to the instant case. In the Lugar case, a judgment creditor used a constitutionally defective statute, an attachment statute, to seize the property of the debtor with the assistance of the sheriff. The Supreme Court of the United States said that's a violation of Section 1983 because the judgment creditor was a state actor acting under color of law and its actions are fairly attributable to the state. In the instant case, the defendant, Chesapeake, utilized a constitutionally defective statute, 1509.28, the unitization statute, to apply to defendant Chief Simmers, a state official, to obtain the rights to permanently and physically invade the subsurface of Plainham's Land by horizontal drilling, by the injection of millions of gallons of water, sand, and chemicals in order to release the oil, gas, and natural gas liquids trapped in the shale to allow it to flow from beneath Plainham's Land through the borehole to a wellhead on adjacent property where defendant Chesapeake took possession, control, and possession of the minerals and continues to do so and has sold those minerals and continues to sell those minerals for its own benefit, all in violation of Plaintiff's rights secured by the 14th Amendment. Are you getting paid for the removal of the product under your land? There is a commission, a royalty of 12.5% that is nowhere near what fair compensation would be. That's what the Chief determined. How was that royalty set? How was that royalty set? When? Who? That royalty is set based on the price received by defendant Chesapeake when it sells the plaintiff's minerals, and then 12.5% is assessed against the gross proceeds received by defendant Chesapeake. But that has no relationship to fair and equivalent compensation, number one. Number two, it isn't even a fair process. The State of Ohio has told the state agencies what it must do by the mandatory appropriation statute when it seeks to take property rights. And the defendant, Chief Simmers, has failed to do that in this case. He's failed to follow Ohio's mandatory appropriation statute. I don't want to intrude upon your time unnecessarily, but we have narrowed the holding in Lugar to the degree that that's your good case. And we have other cases that more directly relate to this that I think really take Lugar out of the ballpark. Your arguments, constitutional arguments and everything, are understandable, but this was sort of a procedural dismissal of this case, which really, if the court was correct, and you're saying it isn't, but if the court was correct in that, it really doesn't implicate all these other factors. Well, those factors were pled in the allegations in the complaint. I understand that, but the court said 1983 is not a vehicle, not a horse you can ride. And we believe that is an error, not only under Lugar, but under Addix. The principle of law remains very valid, Your Honor, in that the facts are quite parallel. I understand this court has other decisions, but, for example, the Watson case cited by the defendants in this case, in the Watson case where this court determined 1983 was not violated, the parties exchanged a deed that conveyed the property rights. In this case, it is the State of Ohio, through the defendant, Chief Simmers, that seeks to convey plaintiff's property rights to a private entity for its private use. By the way, that's the third violation of the Due Process Clause. The Supreme Court has been very clear that the conveyance of private property to a private entity for private use is a violation of the Due Process Clause. That's the Missouri Pacific Railway case and the Kelo case. In this case, that's exactly what has occurred. The State of Ohio, by and through the defendant, Chief Simmers, has conveyed plaintiff's property rights in the subsurface, in the oil, gas, and natural gas liquids, and the right to extract to defendant Chesapeake a private entity for its private use in violation of the Due Process Clause, according to the Supreme Court. So, with all due respect to the District Court, the decision of the District Court is not sustainable based upon the decisions of the United States Supreme Court. Therefore, we urge this Court to reverse and vacate the decision of the District Court and to remand this case for further proceedings consistent with the 14th Amendment. Quite simply stated, the defendant State cannot take the plaintiff's property in violation of the Due Process Clause and the Takings Clause. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. I'm Sam Peterson on behalf of the Ohio Department of Natural Resources. I'll be arguing for 10 minutes this morning. Tim McGrainer is here on behalf of Chesapeake Exploration. He'll be arguing for the remaining five. No one disputes that all Ohio landowners have a right to seek to obtain the benefit of any oil and gas that may exist underneath their property. This is not an absolute right, and it is not a right to the oil and gas itself. Instead, it's what is known as a correlative right. It's a right that is held together with all neighboring landowners whose property also sits on top of a common source of supply. A unitization order, like the one at issue in this case, is a means of protecting, among other things, those correlative rights, and a district court correctly determined does not constitute taking. Now, I think you can break plaintiff's arguments down into two separate types of takings. There's what I think of as a traditional taking as it relates to the oil and gas and the value of the oil and gas. And then there's a Loretto-style taking, which constitutes a physical invasion claim. And I think you can actually break their Loretto claim down into two other component parts. But I'd like to start with the first part, with the oil and gas itself, and briefly just take a step back to discuss the nature of the right that is alleged to be taken, this correlative right. In Ohio, correlative rights are defined by 1509.01i, and they say that it is an opportunity to every person to seek to obtain the oil and gas under their property or the benefit thereof. And correlative rights replaced what was known as the rule of capture. And before 1965 in Ohio, what happened with oil and gas was, if I drilled a well on my property, anything that came out of that well, whether it came from my property, whether it came from my neighbor's property, belonged to me. And so therefore, some landowners could lose all benefit of any oil and gas that existed under their property. When Ohio adopted a correlative rights scheme, they joined many other oil and gas producing states in protecting everyone's rights. And so under the laws that exist in Ohio, it is actually more protective of oil and gas rights than it used to be. Because now, no longer are you running the risk that you could be deprived of all of your oil and gas. Instead, when you are part of a unit, you are guaranteed some portion of the proceeds, some portion of the oil and gas. But I gather that one of the points your opponent is making is that he doesn't believe that his client is getting a fair amount in exchange for the oil and gas that is being withdrawn. And, Your Honor, that's a valuation question but not a takings question. And I point the court to the Ohio oil decision. And that's the 1900 decision from the U.S. Supreme Court where they recognized that when states adopt statutes governing the exercise of correlative rights, those do not constitute a taking. And every court, and I point the court to pages 19 through 20 of our brief, who has considered the question, has held that unitization and pooling, because they are similar but distinct concepts, does not constitute a taking. And I would suggest that the court not be the first. And so to the extent that the plaintiffs have questions about how that state police power has been exercised, it's not a question about a taking but more a question about the process. And they had an opportunity to appeal those issues when the unitization order was issued. They chose not to do so. They filed first in federal court. Then they went back to state court, filed mandamus, and now we're back here in federal court on a new claim. But I would also point to the unitization statute itself, 1509.28. And there are two relevant provisions there that show that nothing has been taken. First, the statute specifically says that no order providing for unit operation shall be construed to result in a transfer of all or any part of title to the oil and gas. And then it goes on to say that the oil and gas allocated to any tract and the proceeds from the sale shall be the property and the income of the party to whom they are allocated. And so at no point has anything been taken, either as a statutory matter or as a jurisprudential matter and as a matter of precedent. And I know the plaintiffs also cite Ohio oil, but the passage that they cite in that case is actually a summary of an argument that the court then goes on to reject. And so Ohio oil does not stand for the principles for which the plaintiffs cite. If I may, I'd like to also address their physical invasion claim, their Loretto-style claim, because the district court also correctly determined that there has been no taking in that context. And as I said, I think you can break their claim down into two different component parts, one related to the drilling of the well itself and one related to the stimulation of the well. And I think there are at least three reasons why neither of those constitute a taking. And the first reason goes back to the correlative rights doctrine, because it's not just that this right to the oil and gas is a collective right that is held together by all affected landowners, but when a well is drilled, the unitization order provides that it is done on behalf of all of those landowners, that there is some contribution, either as a risk penalty or other allocation, of the cost of drilling the well. So yes, Chesapeake may be drilling the well, but it's actually a collective action. And that distinguishes it from Loretto in the sense that Loretto said that putting a cable box by the cable company on your property is a physical invasion and therefore constitutes a taking, even if it's de minimis. But Loretto also said that if you owned the cable box, if they put it on there and title transferred to you as the property owner, then that would not be the same type of concern. There would not be a physical invasion. Here, when you have a well that is going underneath your property, it is a well that is owned in part by all of the affected landowners. They have all contributed. So yes, Chesapeake has drilled it, but it is for the benefit of all the landowners to protect their correlative rights and the common source of supply. Let me ask you a question about how the system works. My understanding is that you can now engage in horizontal drilling so that you don't have to go down to a pool. You can go through a pool horizontally. And that you can also engage in fracking, where through that process you can control the direction and the way the oil and gas might flow in the substratum. How is that handled as a taking? I mean, you can engage in a process that allows the driller to push the oil in one direction or another toward a direction in which he can recover it from above. So am I wrong in that description? Not entirely, Your Honor, and I think that is generally correct, that you do drill horizontally through a pool now and you talk about the fracturing and the fracking. What is important about that is that is not really a new technique. As Bruce Kramer in the Ohio Oil and Gas Association pointed out in their amicus at pages 6 and 7 and page 11, there's always been that type of fracturing of a rock. And so the amount that you can control is, yes, you have some degree of control over how the oil and gas flows, but you do not have any significant, the greater degree of control when it comes to the fracturing than you used to. And I think that all of... When you say fracturing, you mean the fracking process? Yes, it has been described as fracturing. It is described in some cases as well stimulation, but I think whatever label you put on it, the fracturing process. All it is is water and sand and I don't know what all goes into the process, but you can change the flow of the oil underground. It doesn't really change the direction of the flow. What it does is it creates fractures in the rock and then it sort of expands those fractures to increase the ability and the porosity of the rock.  Those types of things were done even with a vertical well. So there's nothing really unique about that aspect of it. And you have other decisions, the coastal oil decision from Texas that talks about whether that activity, the fracking, if you will, constitutes a physical invasion and it says it does not. And briefly, Your Honor, I'd like to also address the second point why this is not a physical invasion. That relates to the Chance v. BP oil decision. In this case, this well is about a mile and a half below the surface and the Ohio Supreme Court in Chance said that your subsurface property rights are not the same as your surface property rights and when things occur that far down, just like a plane flying overhead does not constitute a trespass, neither does activity far below the surface. Would it matter if the activity far below the surface caused subsidence or caused fumes or caused other things? I think it would depend, Your Honor. But what the Ohio Supreme Court said in Chance is it has to interfere with a reasonable foreseeable use of your property, either the surface or the subsurface. And that use has to be, at least in this case, separate from the oil and gas interest because as we talked about in the context of the traditional taking, it is not a taking in that respect. And I see that my time is up. We would ask the Court to affirm the District Court and hold that no taking has occurred in this case. Thank you. Good morning, Your Honors. May it please the Court. Tim McRainer on behalf of the Appley-Chesapeake Exploration. As Judge Gein noted, my client has an additional grounds for affirming the dismissal below. It's that Chesapeake was not a state actor in any way. As you noted, the Lugar case on which plaintiffs primarily rely is a case that has been limited by this Court expressly to only those circumstances involving prejudgment attachment and prejudgment execution. This Court has stated on multiple occasions that it does not apply outside of those contexts. In addition, Lugar factually is different because in that case, there was some activity by a state actor to seize the property that was alleged to have been taken. Here, all of the activities that the appellants allege Chesapeake engaged in were activities that Chesapeake engaged in on its own. Chesapeake was the one to drill the wells here. Chesapeake was the one to engage in the hydraulic fracturing. And Chesapeake was the one to extract the minerals. The state didn't participate in any of those activities at all. It was all done on behalf of Chesapeake for all of the correlative rights owners in that pool. So for those reasons, Chesapeake should be dismissed in any event because it was not a state actor. I'd also like to... The only theory of liability here is through state action, is that right? There's no separate private right that's asserted? That's correct. They have not alleged any sort of tort liability on behalf of Chesapeake or any breach of contract or any other type of allegations against Chesapeake. In this case, the only allegations that they have made is that Chesapeake was a state actor and thus operating under color of law under 1983. We'd submit that that doesn't comport with this Court's case law. So I'll understand. Could you tell me when Chesapeake drills, you can drill horizontally as well as vertically? Sure. Let me explain that a little bit. To some extent, you can make the oil go whatever direction you want it to go into and then capture that oil through the horizontal drilling. Am I correct about that? Almost. And what happens is you start at a surface location where we do have rights to be on that property and you go down about a mile and a half and then you can drill out 5,000, 6,000. These are now going up to 15,000 feet out to different locations. And what happens is you fill that with water and sand and various propens that pop open the rock and allow the gas to flow. But you don't have the ability to necessarily control where those fractures go. It's the cracks in the rock that you lose control of. You can control the wellbore and the direction of the wellbore, but you don't have the ability to control the fractures. And that's why it's important to understand the correlative nature of the oil and gas here. It's because of that inability to control where the fractures go, you don't know where the oil and gas is going to then come from. So you could be up to your neighbor's property line, but the fractures and the flow of gas can come from that neighboring property. And that's why when you have a pool, as the chief here found there was a pool, you have a correlative right for every member in that pool to take their fair share. And that's why this is not a taking. It's actually enhancing their right to receive property. Because otherwise, under their theory, we'd have to be so far away from their property that it would never get developed. They'd never get paid. When you say the correlative right to take their fair share, how is the fair share determined? So under the statute, the chief makes a determination of the factors necessary to provide for the protection of the correlative rights. This is the chief of the Department of Natural Resources? The Division of Oil and Gas, yes, that's correct. So it's a state actor? That is a state actor, correct, by statute. And plaintiffs had the opportunity to, if they disagreed with that amount, they had the opportunity to appeal that then to the Oil and Gas Commission. They didn't raise that at that body. They then had an opportunity to appeal that decision to the Court of Common Pleas, which could determine whether the chief had set their amount appropriately. They didn't avail themselves of that opportunity, and so they passed on it. And so any allegations at this point that the chief's decision was an incorrect amount really are waived and can't be collaterally attacked. So the chief's already decided that. So for all of those reasons, we'd ask that the court below be affirmed. Thank you. Your Honor, Judge Moore, with respect to your issue regarding compensation, we refer this court to the Horn case, the Chicago Railway case, and the Ohio Revised Code, Chapter 163, dealing with the mandatory appropriation statute. Judge Merrick, with respect to the horizontal drilling and the hydraulic fracturing, that is a relatively new process in Ohio. It didn't begin until about 2010. With the advent of horizontal drilling combined with hydraulic fracturing, you can control the drill bit with the GPS system within a matter of a couple feet. Now, the fracturing is another issue. But this court we would refer to for property rights. The answer was that you can't control the way the oil flows from fracking. At least that was my interpretation of what he said. Yeah, that's not completely clear because there's only one way the oil can flow, the gas can flow in the natural gas liquids, and that's through the borehole. It doesn't go anywhere else. It's fractured and it follows the point of least resistance, which is the borehole that they've drilled under the plaintiff's property, and then it returns it to the wellhead on adjacent property where Defendant Chesapeake takes control. With respect to 1983, the Defendant Chesapeake did work in concert with the State Division of Oil and Gas Resources Management because the Defendant Chesapeake applied to the chief for the right to invade the property by horizontal drilling and hydraulic fracturing and the right to remove those net minerals from beneath plaintiff's land. So there are several theories of state actor. Which theory are you relying on to show that Chesapeake is a state actor? We are relying upon their actions being fairly attributable to the state because they applied to the division chief, Defendant Simmers, for the right to drill beneath the property, inject millions of gallons of water, sand, and chemicals to fracture the shale beneath plaintiff's property, to release the oil, gas, and natural gas liquids trapped, and then to remove them, to extract them. If those are property rights secured by the 14th Amendment, which we believe, then there was a violation of those property rights. And we refer this case, this court, to the case of City of Norwood v. Horney, which was cited by the court with approval in the Cambridge case decided in October of 2018, where the Supreme Court of Ohio stated a very high regard for property rights, stating that those property rights are fair, fundamental, and original rights that exist prior to the formation of government itself. Also, we refer this court to the case of McNamara v. City of Rittman dealing with appurtenant rights, also cited in the Cambridge case in the concurring opinion. So we believe that there was state action by the Defendant Chesapeake because it took it upon itself to apply for the right to invade and take plaintiff's property. Thank you, Your Honors. Thank you all for your argument. The case will be submitted. Would the clerk call the next case, please?